**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE
CIVIL DIVISION**

| | |
|---|---|
| **MUHAMMAD TAHA** ) <br> 176 Sector C, Askari 10, Lahore, Pakistan ) <br> ) <br> 12 Field Rd., West Lebanon, 03784, NH, USA ) <br> ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF STATE** ) <br> c/o Office of the Legal Advisor ) <br> 600 19th Street NW, Suite No. 5600 ) <br> Washington, D.C. 20522 ) <br> ) <br> **MARCO RUBIO** ) <br> U.S. Secretary of State ) <br> Office of the Legal Advisor ) <br> 600 19th Street NW, Suite No. 5600 ) <br> Washington, D.C. 20522 ) <br> ) <br> **FEDERAL BUREAU OF INVESTIGATION** ) <br> **HEADQUARTERS** ) <br> 935 Pennsylvania Avenue, NW ) <br> Washington, D.C. 20535 ) <br> ) <br> *Defendants*. ) | **COMPLAINT PURSUANT TO THE MANDAMUS ACT, 28 U.S.C § 1361, AND FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701,** *et. seq.* <br><br><br> No. 1:25-cv-00206 |

## **COMPLAINT**

1. The U.S. Department of State is responsible for representing American interests throughout the world, and for "help[ing] foreign nationals connect with the United States" by issuing visas to qualified visitors, workers, and immigrants.[1]

2. Visa requests by foreign nationals, both short-term non-immigrant visas and permanent immigrant visas, are adjudicated through the Department of State's Bureau of Consular Affairs at U.S. Embassies and Consulates abroad. These requests are reviewed and decided by consular officials who are charged with issuing a visa or refusing a visa.

3. When an applicant for a visa has demonstrated *prima facia* eligibility to receive a benefit, a consular officer may still "determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa."[2] In such cases, the visa applications are classified as being held for "administrative processing."[3]

4. When administrative processing is initiated, the consular officer is charged with informing the foreign national that the application will be scrutinized further – and, that administrative processing times can vary widely depending on the circumstances of each case. Foreign nationals are generally told to wait patiently for the issuance of the visa, and that they will be contacted by the Embassy when eligibility is officially decided.

5. Plaintiff Muhammad Taha ("Plaintiff" or "Mr. Taha") is a citizen and national of Pakistan.

6. On June 17, 2019, Plaintiff Taha was approved for an F-1 student visa, which expired on June 13, 2024. *See* Exhibit A, Copy of Plaintiff's Passport and F-1 Visa. Plaintiff had completed his secondary education in Pakistan, earning a Bachelor of Science (BS) degree

---

[1] *Our Mission*, U.S. Department of State, Bureau of Consular Affairs (last visited October 16, 2024), https://www.state.gov/bureaus-offices/under-secretary-for-management/bureau-of-consular-affairs/.
[2] *Administrative Processing Information*, U.S. Department of State (last visited May 22, 2025), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.
[3] *Id.*

2

in Biology from the Lahore University of Management Sciences (LUMS) in June of 2018. In August of 2019, Plaintiff began a PhD in the Molecular and Cellular Biology Program at Dartmouth College in Hanover, New Hampshire.

7. Plaintiff's research focuses on characterizing novel proteins involved in the Wnt signaling pathway in *Drosophila melanogaster* (fruit flies). The Wnt pathway regulates developmental processes across multiple organisms, including humans. Dysregulation of this pathway is closely linked to various cancers, particularly colorectal cancer. Plaintiff's work aims to identify and study new proteins within this pathway that could serve as potential therapeutic targets for drug development.

8. Since the initial grant of his F-1 visa, Plaintiff has traveled outside of the United States on multiple occasions without issue.

9. Plaintiff most recently left the United States on September 13, 2024, to visit Pakistan, where he now remains in the absence of a renewed F-1 visa permitting his entry to the United States. Although Plaintiff is still enrolled at Dartmouth as a PhD candidate and has continued working on his thesis remotely, he is unable to re-enter the country in order to complete laboratory work, a requirement for his doctoral degree.

10. On September 16, 2024, while in Pakistan, Plaintiff submitted the requisite documents to renew his F-1 student visa. Plaintiff was given a visa interview waiver and was not required to attend an in-person interview. Rather, he was only asked to submit his passport and Form I-20, Certificate of Eligibility for Nonimmigrant Student Status.

11. On September 18, 2024, a case was created for his application on the Consular Electronic Application Center ("CEAC") website. This case has not been updated on the online platform since September 23, 2024.

12. On September 30, 2024, Plaintiff's documents and passport were returned to him by the Non-immigrant Visa Section of the Embassy of the United States in Islamabad, Pakistan, along with a "pink slip" paper stating that his application had been initially refused under section 221(g) of the INA and would now be placed into "additional administrative processing." *See* Exhibit B, Copy of 221(g) Letter from the U.S. Embassy in Islamabad. The slip further stated that Mr. Taha should not submit additional documents until asked to do so. *Id.*

13. The document did not provide an explanation for the refusal, nor a timeline for the Consulate's review of his application.

14. Plaintiff and his academic advisors at Dartmouth had intended that he resume his PhD program after a brief visit to Pakistan.

15. On October 29, 2024, Plaintiff Taha sent a message to the Islamabad Embassy requesting an update on the status of his case. On October 30, 2024, he was told that his application remained in administrative processing. *See* Exhibit C, Messages from Muhammad Taha to U.S. Embassy in Islamabad.

16. On November 4, 2024, Plaintiff again emailed the Embassy, asking for an update and noting that he had rescheduled his flight. He received a reply stating that his application remained in administrative processing and that he should inquire 180 days after having submitted his documents (approximately March of 2025). *See* Exhibit C, Messages from Muhammad Taha to U.S. Embassy in Islamabad. He again inquired on November 15 and received the same reply. *See id.*

17. Increasingly concerned about the unknown administrative processing time of his visa application and unable to continue his lab work, Plaintiff asked Dartmouth for its

4

assistance. The college in turn requested assistance from U.S. Senator for New Hampshire, Maggie Hassan. On November 26, 2024, a representative of Senator Hassan emailed the Islamabad Embassy. On December 2, 2024, the Embassy replied to inform Senator Hassan and Plaintiff that his application remained in administrative processing. The email further informed the parties that "[a]dministrative processing can last up to 60 days, but in some instances, can take significantly longer." *See* Exhibit D, Emails from Senator Hassan to U.S. Embassy in Islamabad and Embassy's Replies.

18. On December 23, 2024, Plaintiff again contacted the Embassy and again received a reply indicating that his visa application remained in administrative processing and that he should wait until 180 days after submission of his documents. *See* Exhibit C.

19. On January 14, 2025, the office of Senator Hassan again emailed the Embassy, specifically noting that Mr. Taha's studies were delayed. The office, and Plaintiff, again received a reply stating that Plaintiff's application remains in administrative processing. No timeline was provided. *See* Exhibit D.

20. On February 25, 2025, the office of Senator Hassan again emailed the Embassy and received the same reply on February 26, 2025, with no timeline provided for completion of administrative processing. *See id.*

21. On April 3, 2025, 206 days after he sent his application and documents, Plaintiff again contacted the Embassy and again received a reply indicating that his visa application remained in administrative processing. Rather than asking him to wait 180 days, the email merely stated that "the time will vary based on the individual circumstances of each case." *See* Exhibit C.

22. On April 14, 2025, more than 217 days after Plaintiff submitted his documents to the Islamabad Embassy, the office of Senator Hassan again emailed the Embassy. The reply, sent on April 15, 2025, only stated that Mr. Taha's application remained in administrative processing and provided no timeline as to its adjudication. *See* Exhibit D.

23. On April 23, 2025, 226 days after initial submission of his documents, Plaintiff sent another email to the Islamabad Embassy and was again informed that his application remained in administrative processing. *See* Exhibit C.

24. On May 12, 2025, 245 days after submitting his documents, Plaintiff Taha again contacted the Embassy. He received a reply the same day, informing him that the Embassy had no update, and that his F-1 visa remained in administrative processing. No timeline was provided. *See* Exhibit C.

25. It has now been more than 255 days, or more than 8 months, since Mr. Taha requested renewal of his F-1 student visa.

26. As of the date of the filing of this Complaint, Mr. Taha has not received any update as to the status of his F-1 application.

27. Despite having filed all necessary documents with the U.S. Embassy in Islamabad, Pakistan, Plaintiff Taha remains unable to enter the United States to continue his PhD program.

28. Because of Defendants' undue delay in processing his immigrant visa, Mr. Taha has been forced to place his academic and professional career on indefinite hold. Although Plaintiff continues to work remotely on his thesis, he is unable to conduct lab work, which is a core component of his responsibilities as a doctoral student.

29. This delay in the adjudication and issuance of Plaintiff Taha's visa is clearly unreasonable.

30. Defendants have a mandatory and affirmative duty to adjudicate a properly filed Nonimmigrant Visa application. Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa." 22 C.F.R. § 41.121(a). ("When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").

31. Plaintiff now seeks the intervention of this Court, lest the delays he continues to endure result in any further harm to his academic pursuits, career, and future.

32. As such, Plaintiff now seeks to compel Defendant Department of State, and its appropriate directors, to act on the instant application and make a final decision on his nonimmigrant Petition.

## **JURISDICTION**

33. This case arises under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 706 *et seq.* Moreover, this court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the issue relates to a federal question. The Court also has authority to grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under the Administrative Procedure Act.

34. Specifically, the Mandamus Act vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the Plaintiff." *See* 28 U.S.C. § 1361.

35. Jurisdiction is also conferred as this case arises under the Administrative Procedure Act, which authorizes this Court to review an agency action and to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

36. Indeed, under these sections of the federal law, the United States has waived its sovereign immunity as a judgment or decree may be entered against it under 5 U.S.C. § 702.

## VENUE

37. Venue in the District of New Hampshire is proper under 28 U.S.C. § 1391(e) because this is a civil action in a district where Plaintiff Taha is enrolled at Dartmouth University, located in Hanover, New Hampshire, and the Defendants in this matter are Officers and Employees of the United States.

## EXHAUSTION

38. Plaintiff has exhausted his administrative remedies. Defendants offer only the ability for Plaintiff to receive general information about the current status of his case via the Department of State's Consular Electronic Application Center and irregular email communication. Plaintiff has no further administrative remedies available to him in order to compel Defendants to perform their non-discretionary duty to either approve or deny his visa.

39. As a result of Defendant's inaction, there has been no final decision made in Plaintiff's case, leaving him in a state of limbo and unable to push his case forward.

40. On information and belief, Defendant Department of State will assert that its decision to send Plaintiff's application to administrative processing is a final agency action in an effort to evade judicial review. However, Defendant has neither approved nor denied

Plaintiff's visa application, as a decision on his visa application is still pending, and no final decision has been rendered.

## PARTIES

41. Plaintiff Muhammad Taha is a 29-year-old citizen and national of Pakistan. He has been enrolled as a PhD student in Dartmouth's Molecular and Cellular Biology program since August of 2019.

42. Mr. Taha originally received an F-1 student visa on June 17, 2019. This visa expired on June 13, 2024. Mr. Taha's visa renewal interview was waived, and he was asked to submit only his passport and Form I-20. While abroad, Mr. Taha submitted all required documents to renew his F-1 student visa to the U.S. Embassy in Islamabad, Pakistan on September 16, 2024. On September 30, 2024, he was informed that his visa application had been placed into additional administrative processing rather than approved.

43. Despite numerous attempts to contact the Embassy about the status of his visa, Mr. Taha continues to await Defendants' action after more than 8 months of delay.

44. Defendant U.S. Department of State ("DOS") is the federal department responsible for diplomatic initiatives throughout the world, including the evaluation of issuances of immigrant and non-immigrant visas to qualifying foreign nationals. *See* 22 U.S.C. 38 § 2651, *et seq.*

45. Defendant Marco Rubio, in his official capacity, is the Secretary of the U.S. Department of State, having been lawfully confirmed by the U.S. Senate on January 20, 2025. In this capacity, he oversees the management of DOS personnel and operations in the United States and at U.S. Embassies and Consulates abroad, including the U.S. Embassy in Islamabad.

46. Defendant Federal Bureau of Investigations ("FBI") is the federal department responsible for conducting background checks on foreign nationals to investigate potential national security threats.

**FACTS AND LAW**

47. On June 17, 2019, Plaintiff Taha was approved for an F-1 student visa. *See* Exhibit A. In August of 2019, he began a PhD in the Molecular and Cellular Biology Program at Dartmouth College in Hanover, New Hampshire. His student visa expired on June 13, 2024, and is eligible for renewal given his continued studies.

48. Plaintiff's research focuses on characterizing novel proteins involved in the Wnt signaling pathway in *Drosophila melanogaster* (fruit flies). The Wnt pathway regulates developmental processes across multiple organisms, including humans. Dysregulation of this pathway is closely linked to various cancers, particularly colorectal cancer. Plaintiff's work aims to identify and study new proteins within this pathway that could serve as potential therapeutic targets for drug development.

49. Since the initial grant of his F-1 visa, Plaintiff has traveled outside of the United States on multiple occasions without issue. Plaintiff generally visited Pakistan for around a month to see friends and family, and on one occasion traveled to Barcelona for approximately ten days.

50. Plaintiff most recently left the United States on September 13, 2024, to visit Pakistan and renew his visa at the U.S. Embassy in Islamabad. He has remained in Pakistan while the status of his F-1 visa renewal is in limbo.

51. On September 16, 2024, while in Pakistan, Plaintiff submitted the requisite documents to renew his F-1 student visa. Plaintiff was given a visa interview waiver and was not

required to attend an in-person interview. Rather, he was only asked to submit his passport and Form I-20, Certificate of Eligibility for Nonimmigrant Student Status.

52. On September 18, 2024, a case was created for his application on the Consular Electronic Application Center ("CEAC") website. This case has not been updated since September 23, 2024.

53. On September 30, 2024, Plaintiff's documents and passport were returned to him by the Embassy, along with a "pink slip" paper stating that his application had been refused under section 221(g) of the INA and would now be placed into "additional administrative processing." *See* Exhibit B. The slip further stated that Mr. Taha should not submit additional documents until asked to do so. *Id.* The document did not provide an explanation for the refusal, nor a timeline for the Consulate's review of his application.

54. On October 29, 2024, Plaintiff Taha sent a message to the Islamabad Embassy requesting an update on the status of his case. On October 30, 2024, he was told that his application remained in administrative processing. *See* Exhibit C, Messages from Muhammad Taha to U.S. Embassy in Islamabad.

55. On November 4, 2024, Plaintiff again emailed the Embassy, asking for an update and noting that he had rescheduled his flight due to the delay. He received a reply stating that his application remained in administrative processing and that he should inquire 180 days after having submitted his documents (approximately March of 2025). *See id*. He again inquired on November 15 and received the same reply. *See id.*

56. Increasingly concerned about the unknown administrative processing time of his visa application and unable to continue his lab work, Plaintiff asked Dartmouth for its assistance. The college in turn requested assistance from U.S. Senator for New

Hampshire, Maggie Hassan. On November 26, 2024, a representative of Senator Hassan emailed the Islamabad Embassy. On December 2, 2024, the Embassy replied to inform Senator Hassan and Plaintiff that his application remained in administrative processing. The email further informed the parties that "[a]dministrative processing can last up to 60 days, but in some instances, can take significantly longer." *See* Exhibit D, Emails from Senator Hassan to U.S. Embassy in Islamabad and Embassy's Replies.

57. On December 23, 2024, Plaintiff again contacted the Embassy and again received a reply indicating that his visa application remained in administrative processing and that he should wait until 180 days after submission of his documents. *See* Exhibit C.

58. On January 14, 2025, the office of Senator Hassan again emailed the Embassy, specifically noting that Mr. Taha's studies were delayed. The office, and Plaintiff, again received a reply stating that Plaintiff's application remains in administrative processing. No timeline was provided. *See* Exhibit D.

59. On February 25, 2025, the office of Senator Hassan again emailed the Embassy and received the same reply on February 26, 2025, with no timeline provided for completion of administrative processing. *See id.*

60. On April 3, 2025, 206 days after he sent his application and documents, Plaintiff again contacted the Embassy and again received a reply indicating that his visa application remained in administrative processing. Rather than asking him to wait 180 days, the email merely stated that "the time will vary based on the individual circumstances of each case." *See* Exhibit C.

61. On April 14, 2025, more than 217 days after Plaintiff submitted his documents to the Islamabad Embassy, the office of Senator Hassan again emailed the Embassy. The

Embassy's reply, sent on April 15, 2025, only stated that Mr. Taha's application remained in administrative processing and provided no timeline as to its adjudication. *See* Exhibit D.

62. On April 23, 2025, 226 days after initial submission of his documents, Plaintiff sent another email to the Islamabad Embassy and was again informed that his application remained in administrative processing. *See* Exhibit C.

63. On May 12, 2025, 245 days after submitting his documents, Plaintiff Taha again contacted the Embassy. He received a reply the same day, informing him that the Embassy had no update, and that his F-1 visa remained in administrative processing. No timeline was provided. *See* Exhibit C.

64. It has now been more than 255 days, or more than 8 months, since Mr. Taha requested renewal of his F-1 student visa.

65. As of the date of the filing of this Complaint, Mr. Taha has not received any update as to the status of his F-1 application.

66. Despite having filed all necessary documents with the U.S. Embassy in Islamabad, Pakistan, Plaintiff Taha remains unable to enter the United States to continue his PhD program.

67. Defendants' undue delay in processing his immigrant visa has significantly slowed the progress of Plaintiff's research, resulting in a delay in the completion of his PhD.

68. As of the date of filing this complaint, Mr. Taha's visa is still undergoing administrative processing.

69. This delay in the adjudication and issuance of Plaintiff Taha's visa is clearly unreasonable.

70. Plaintiff now seeks the intervention of this Court, lest the delays he continues to endure result in any further harm to his academic pursuits, career, and future.

71. As such, Plaintiff now seeks to compel Defendant Department of State, and its appropriate directors, to act on the instant application and make a final decision on his nonimmigrant Petition.

72. Plaintiff has suffered not simply from disappointment and uncertainty regarding his pending visa application, but also from realistic and imminent concerns for his future ability complete his PhD program, in which he has already invested more than five years and substantial effort. Plaintiff must be physically present at his campus to conduct the laboratory research required to complete his doctoral degree.

73. Plaintiff has seen no movement on his case, or any sign of hope from Defendants that this ordeal will soon come to an end.

74. Plaintiff now seeks to compel Defendant Department of State to act on his visa application by invoking 28 U.S.C. § 1361, the Mandamus Act. The Doctrine of Consular Non-reviewability is not applicable to the present circumstance. *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) ("[W]hen the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.").

75. Similarly, other Circuit Courts have held, over objections of consular non-reviewability, that mandamus is appropriate for stalled visa applications when no decision has been made by a consular officer. *See, e.g., Mulligan v. Schultz,* 848 F.2d 655, 657 (5th Cir. 1988); *Samirah v. Holder*, 627 F.3d 652, 663-664 (7th Cir. 2010); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.,* 617 F. Supp. 3d 1, 12 (D.D.C. 2022) (identifying a "long line of

decisions" holding that consular non-reviewability "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision" because the INA does not give immigration officials "discretion [to] indefinitely . . . delay a decision on a visa application").

76. Further, "[e]xecutive agencies covered by the APA are required to conclude matters presented 'within a reasonable time' and the APA gives courts the ability to "compel the action that has been unreasonably delayed." *Pouroshi v. Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446 (N.D. Cal. Nov. 15, 2021) (citing 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1)).

77. Moreover, Congress has provided a timetable indicating the anticipated timeline with which it expects the agency to proceed on visa petitions.

78. Pursuant to 8 U.S.C. § 1571(b), which seeks to provide regular congressional oversight as well as mechanisms in eliminating the backlog and processing delays in immigration benefits, adjudications, and to maintain the elimination of the backlog in future years, "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."

79. Congress affords some nonimmigrant visa types an even shorter processing time of just 30 days. *See* 8 U.S.C. § 1571(b) ("a petition for a nonimmigrant visa under section 214(c) of the Immigration and Nationality Act [8 USCS § 1184(c)] should be processed not later than 30 days after the filing of the petition.").

80. Indeed, Defendant Department of State, declares that immigrant visa "applicants should wait 180 days for administrative processing to be completed before inquiring further with the Consulate."

81. As of the date of the filing of this complaint, it has been more than eight months since Mr. Taha first submitted his request to renew his F-1 visa.

82. Defendant's continued inaction is inconsistent with the clear intent of Congress to see applications for immigration benefits reasonably and efficiently adjudicated.

83. The U.S. Embassy has clearly failed to execute its nondiscretionary duty to issue a visa or a final refusal. This is evident from: (1) its failure to comply with its own refusal procedures; (2) the language of its communications with the Plaintiff.

84. Defendants have a mandatory and affirmative duty to adjudicate a properly filed Nonimmigrant Visa application. Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa." 22 C.F.R. § 41.121(a). ("When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").

85. A final refusal must conform to the "refusal procedures" in Subsection (b) of 22 C.F.R. § 41.121.

86. These refusal procedures include: (1) notification, on the application, of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal; (2) return of all other supporting documents supplied by the applicant; (3) review, in accordance with guidance by the Secretary of State, by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures "without delay," if grounds of eligibility cannot be overcome by the presentation of additional evidence, or after "not more than

120 days" if the ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated their intention to submit such evidence. *See* 22 C.F.R. § 41.121(b)-(c).

87. Plaintiff Taha has seen no action on his application since being told that it had been sent for administrative processing on September 30, 2024. Plaintiff has received no decision, let alone further clarification from Defendants that gives any indication of a decision, any anticipated date at which the state of continuous administrative processing may come to an end, or any explanation of what is causing this extensive delay.

88. As such, pursuant to the authority of the Mandamus Act and the Administrative Procedure Act, this Court retains authority to order that Defendant Department of State make a final decision on Plaintiff's nonimmigrant visa application.

## RELIEF

### COUNT I—RELIEF Under the Mandamus Act

89. Plaintiff re-alleges and incorporates by reference as if fully restated, the facts and allegations in all preceding paragraphs.

90. Plaintiff requests the Court to order the Defendant to immediately adjudicate Plaintiff Taha's application for a nonimmigrant visa pursuant to the Mandamus Act, 28 U.S.C. §1361.

91. Plaintiff in fact has a clear and certain right to the relief requested.

92. Defendant Rubio, as Secretary of State, head of the U.S. Department of State, the federal agency responsible for the review and issuance of nonimmigrant visas has a certain, mandatory, ministerial duty to issue or refuse Plaintiff Taha's application for an immigrant visa within a reasonable time.

93. Indeed, federal regulations provide that the Department of State "must either issue or refuse" a visa. 22 C.F.R. § 41.121(a); *see also* 9 FAM 403.10-2(a) ("[A non-immigrant visa] must be issued or refused in all cases once an application *has been made*, except when the Secretary has ordered you to discontinue issuing visas under INA 243(d). . . . The visa refusals must be based on legal grounds . . . A quasi-refusal (e.g., P6C, P6E, etc.) may not be used as the sole ground for a refusal.").

94. Defendants have failed to timely and reasonably adjudicate Plaintiff's nonimmigrant visa request.

95. Plaintiff has no administrative remedy available to him other than seeking relief from this Court.

## COUNT II—Relief Under the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.*

96. Plaintiff re-alleges and incorporates by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

97. Pursuant to 5 U.S.C. § 706, Plaintiff seeks review by this Court and requests that the Court compel the agency action unlawfully withheld or unreasonably delayed by Defendants.

98. The Department of State has a duty to adjudicate Plaintiff's visa application in a reasonable amount of time. *See* 8 C.F.R. § 41.121.

99. The continued inaction of the Defendants, and the unreasonable delay in adjudicating the visa application, is causing harm to the Plaintiff in this case.

100. Plaintiff has no other administrative remedy available to him beyond those pled herein.

**WHEREFORE**, Plaintiff requests the following relief from the District Court for the District of New Hampshire:

A. Mandate that Defendants adjudicate the pending nonimmigrant visa application for Plaintiff Taha;

B. Award Plaintiff costs of this action pursuant to 28 U.S.C. § 2412(b), *et seq*.; and,

C. Grant Plaintiff any and all other relief this Court deems equitable and just.

Respectfully submitted for the Plaintiff,

/s/ Emily A. White
Counsel for Plaintiff
NH Bar No. 269110
Orr & Reno
45 South Main Street, P.O. Box 3550
Concord, NH 03302-3550
Phone: (603) 224-2381
Fax: (603) 223-9075
ewhite@orr-reno.com


/s/ Stephen J. Antwine
Stephen J. Antwine, Esq.
Counsel for Plaintiff (*Pro Hac Vice pending*)
PA Bar No. 309379
Green & Spiegel, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (401) 454-7880
santwine@gands-us.com